# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDINE MACASPAC, individually, and on behalf of all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>HENKEL CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.: 3:17-cv-01755-H-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS; and**<br><br>[Doc. No. 24]<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AS MOOT**<br><br>[Doc. No. 23] |

On July 28, 2017, Plaintiff Claudine Macaspac ("Macaspac") filed a class action complaint against Defendant Henkel Corporation ("Henkel") in the San Diego County Superior Court, asserting claims for violations of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq., Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., and False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. (Doc. No. 1-2.) Henkel removed that lawsuit to this District on August 30, 2017, (Doc. No. 1),

and filed an answer on September 25, 2017. (Doc. No. 6.)

On March 29, 2018, Macaspac filed a motion for class certification. (Doc. No. 23.) One day later, Henkel responded by moving for judgment on the pleadings. (Doc. No. 24.) The parties filed their respective opposition papers on May 21, 2018. (Doc. Nos. 30, 33.) Thereafter, at the parties' request, the Court deferred consideration of the motion for class certification until after the motion for judgment on the pleadings had been heard. (Doc. No. 40.) Henkel filed a reply brief in support of its motion on May 29, 2018. (Doc. No. 41.) The Court held a hearing on the motion for judgment on the pleadings on June 4, 2018. Michael Houchin and Ronald A. Marron appeared for Macaspac, while William F. Tarantino and Ashleigh Landis appeared for Henkel. For the reasons below, the Court grants Henkel's motion for judgment on the pleadings, and denies Macaspac's motion for class certification as moot.

## **Background[1]**

Macaspac is a San Diego area resident. (Doc. No. 1 at ¶ 11.) Sometime in May 2017, Macaspac purchased several bottles of Henkel's "Purex Crystals" products from a Walmart store in San Diego. (Id. at ¶ 4.) Purex Crystals is an in-wash fragrance booster used to give laundry a fresh scent when it comes out of a washing machine. (Id. at ¶ 4.) Macaspac alleges that she "expected to receive a full container of the Purex Crystals product, which is packaged in non-transparent containers," but "was surprised and disappointed when she opened the Purex Crystals product to discover that the container had more than 30% empty space, or slack-fill." (Id. at ¶ 5.) Macaspac further alleges that had she "known about the slack-fill at the time of purchase, she would not have bought" the product. (Id.) She avers that the Purex bottles are deceptive and misleading, and violate several California consumer protection statutes. (Id. at ¶¶ 45–75.) Macaspac brings this suit on behalf of a similarly situated California consumers, and seeks various monetary and equitable remedies. (Id. at 18.)

---

[1] The Court grants the parties' unopposed requests for judicial notice. (Doc. Nos. 24-3, 30-8.)

## Discussion

### I. Legal Standards

Federal Rule of Civil Procedure 12(c) permits a district court to terminate a lawsuit where the facts alleged in the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. See Daewoo Elecs. Am. Inc. v. Opta Corp., 875 F.3d 1241, 1246 (9th Cir. 2017). The parties agree that Federal Rule of Civil Procedure 9(b)'s particularity standard governs each of Macaspac's claims.

The Ninth Circuit has explained that:

> Under Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud. This means the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false. Knowledge, however, may be pled generally.
>
> Under [Ninth Circuit] case law, Rule 9(b) serves two principal purposes. First, allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. Thus, perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading.
>
> Second, the rule serves to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis. By requiring some factual basis for the claims, the rule protects against false or unsubstantiated charges.
>
> Consistent with these requirements, mere conclusory allegations of fraud are insufficient. Broad allegations that include no particularized supporting detail do not suffice, but statements of the time, place and nature of the alleged fraudulent activities are sufficient. Because this standard does not require absolute particularity or a recital of the evidence, a complaint need not allege a precise time frame, describe in detail a single specific transaction or identify the precise method used to carry out the fraud.

United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (citations, quotation marks, alterations and footnote omitted).

In reviewing a Rule 12(c) motion, a district court must accept as true all facts alleged in the pleadings, and draw all reasonable inferences in favor of the non-moving party. See

Gregg v. Hawaii Dep't of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017).  But because "Rule 12(c) is 'functionally identical' to Rule 12(b)(6)," U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted), a court need not accept "legal conclusions" as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, it is improper for a court to assume the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

If a court grants judgment on the pleadings, it must then determine whether to grant leave to amend.  See Gregg, 870 F.3d at 887.  "'A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

**II.   Analysis**

Henkel argues that it is entitled to judgment on the pleadings because no reasonable consumer could have been deceived by the Purex packaging, and Macaspac lacks standing to either bring claims predicated on products that she did not purchase, or to sue for injunctive relief.  (Doc. No. 24-1.)  Macaspac rejoins that a reasonable consumer could have been deceived by the size of the Purex bottles into believing that they contained more product that they did, and also disputes Henkel's arguments about her legal standing to bring claims related to all of Henkel's allegedly deceptive products.  (Doc. No. 30.)  As explained below, the Court agrees that no reasonable consumer could have been misled by the Purex bottles, which both allowed consumers to see that the bottles contained slack fill, and accurately reported the aggregate weight of the product inside.  The Court declines to

4

3:17-cv-01755-H-BLM

address Macaspac's standing to bring claims related to products that she did not purchase, which, as the Court has recently noted, is an open question under California law. See Covell v. Nine W. Holdings, Inc., No. 3:17-cv-01371-H-JLB, 2018 WL 558976, at *5 (S.D. Cal. Jan. 25, 2018) (Huff, J.) ("The district courts in this Circuit are divided as to whether plaintiffs have statutory standing under the UCL, FAL, and CLRA to assert claims for deceptive advertising related to items that they did not purchase.").

### A. Sufficiency of Macaspac's Claims

#### 1. Reasonable Consumer Test

Macaspac's complaint asserts violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 et seq., False Advertising Law ("FAL"), Bus. & Prof. Code § 17500 et seq., and Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750 et seq. (Doc. No. 10.) These claims are governed by California law. The Ninth Circuit has explained:

> California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof. Code § 17200. The false advertising law prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. and Prof. Code § 17500. "'[A]ny violation of the false advertising law . . . necessarily violates' the DUCL." [Kasky v. Nike, Inc., 27 Cal.4th 939, 950 (2002) (quoting Comm. on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 210 (1983))]. California's Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.
>
> [A plaintiff's] claims under these California statutes are governed by the "reasonable consumer" test. Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." (citation omitted)); [Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 506–07 (2003)] ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.").

Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008).

Under the reasonable consumer standard, a plaintiff must "show that 'members of the public are likely to be deceived.'" Freeman, 68 F.3d at 289 (quoting Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1267 (1992)). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Lavie, 105 Cal. App. 4th at 508. Rather, the reasonable consumer standard adopts the perspective of the "ordinary consumer acting reasonably under the circumstances." Id. at 512. The reasonable consumer need not be "exceptionally acute and sophisticated." Id. at 509 (citation omitted). To the contrary, questions of judgment calling for the perspective of a reasonable consumer are "determined in the light of the effect [such a question] would most probably produce on ordinary minds." Id. (citation omitted).

The "primary evidence in a false advertising case is the advertising itself." Brockley v. Moore, 107 Cal. App. 4th 86, 100 (2003). The Ninth Circuit has recognized that the question of whether advertising materials are deceptive to a reasonable consumer "will usually be a question of fact not appropriate for decision" at the pleading stage. Williams, 552 F.3d at 938. However, actions may be dismissed under the reasonable consumer test when "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." Id. at 939; see also Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (affirming dismissal of deceptive advertising claims where the plaintiff's "claim that the reasonable consumer would be deceived" was "not plausible"); Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (affirming dismissal of false advertising suit where advertising contained no literally false statements, and plaintiff's theory for how advertising was misleading "defie[d] common sense"); Martinez-Leander v. Wellnx Life Scis., Inc., No. CV 16-08220 SJO (Ex), 2017 WL 2616918, at *7 (C.D. Cal. Mar. 6, 2017) (dismissing deceptive advertising claims based on nonfunctional slack fill where plaintiff "no reasonable consumer could have been misled" by product packaging).

### 2. Section 12606

Macaspac's UCL claim is partially predicated on Henkel's alleged violation of Business and Professions Code § 12606(b). That provision provides:

> No container shall be made, formed, or filled as to be misleading. A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of [fifteen specified safe harbor exceptions].

Id.

Section 12606 furthers the legislative "goal of providing the consumer with accurate information in the form of the packaging about the quantity of contents and facilitates value comparisons." Hobby Indus. Ass'n of Am., Inc. v. Younger, 101 Cal. App. 3d 358, 366 (1980). The statute "prohibits all . . . nonfunctional slack fill packaging whether or not there is other proof of deception or fraud." Id. at 364. Accordingly, when a plaintiff brings a claim under the "unlawful" prong of the UCL predicated on a violation of § 12606(b), the "only defense available is that the conduct is not unlawful within Section 12606," id. at 372, either because the container allows "the consumer to fully view its contents," Cal. Bus. & Prof. Code § 12606(b), or because the slack fill is permissible under one of the statute's safe harbor exceptions. Younger, 101 Cal. App. 3d at 372.

### 3. Application to Macaspac's Claims

Henkel argues that Macaspac cannot maintain a UCL claim predicated on a § 12606(b) violation because the Purex bottles permit consumers to fully view the bottles' contents. (Doc. No. 24-1 at 9.) Relatedly, Henkel argues that the balance of Macaspac's claims must fail because no reasonable consumer could be deceived by the Purex packaging, which accurately reports the weight of the product contained in each bottle. (Id. at 13.) Macaspac argues that: (i) she has stated a § 12606(b) claim because the Purex bottles are not fully transparent; and (ii) a reasonable consumer could be misled by the

bottles' size into thinking that the weight reported on the label is equivalent to an amount approximately the size of the bottle, and thus a reasonable consumer could be misled into thinking that the Purex bottles contained more product than they actually did. (Doc. No. 30 at 5, 7–9.)

After reviewing the parties' submissions, the Court agrees with Henkel that no reasonable consumer could be deceived as to the amount of product contained in the Purex bottles. The parties attached several photographs of the Purex bottles Macaspac purchased to their respective requests for judicial notice.[2] (See Doc. Nos. 24-2 Ex. A, 30-4.) Although the bottles depicted in the photographs differ somewhat,[3] each bottle is a cylinder that contains a roughly 1-2 inch transparent band along the lower part of the bottle's exterior, and each bottle's bottom is fully transparent. (Id.) Using the transparent band and bottom, a consumer can fully see the bottle's contents—including the slack fill inside—by turning the bottle on its side and looking in through the bottom. (Doc. No. 24-2 PageID 499.) Moreover, a consumer can also view the bottles' contents by opening the lid without altering the packaging or damaging the product. (Id. PageID 500; Doc. No. 30-4 PageID 603.)

After viewing the Purex bottles, two conclusions are readily evident. First, the bottles do not violate § 12606(b) because they "allow the consumer to fully view [their] contents." Although Macaspac stresses that the bottles are mostly non-transparent, (Doc. No. 30 at 5), § 12606(b) does not require packaging to be fully transparent as long as it allows consumers "to fully view its contents." The Purex bottles are entirely consistent with the statute's core purpose "of providing the consumer with accurate information in

---

[2] The Court encloses representative examples of these photographs with this Order. The Court also notes that the parties provided examples of the Purex bottles for the Court to review at the June 4, 2018 hearing.

[3] Specifically, the bottles photographed by Henkel show a transparent band across the middle and sides, while this band does not appear on the bottles photographed by Macaspac (although it is apparently present in the bottles pictured in the complaint). The Court assumes that Macaspac's photographs accurately represent the bottles in dispute.

the form of the packaging about the quantity of contents and facilitat[ing] value comparisons." <u>Younger</u>, 101 Cal. App. 3d at 366. Accordingly, Macaspac cannot maintain a claim under the UCL's unlawful prong predicated on a violation of § 12606(b).

Second, no reasonable consumer could find the Purex bottles deceptive. "No reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product contained therein." <u>Bush v. Mondelez Int'l, Inc.</u>, No. 16-cv-02460-RS, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016); <u>accord</u> <u>Ebner</u>, 838 F.3d at 967. While excessive slack fill may sometimes prove deceptive in products with non-transparent packaging despite accurate labeling indicating the product's weight, <u>see, e.g.</u>, <u>Escobar v. Just Born Inc.</u>, CV 17-01826 BRO (PJWx), 2017 WL 5125740, *9 (C.D. Cal. June 12, 2017), no person could reasonably expect a bottle to be full or nearly full when they can look inside and see that it is not. Here, the Purex bottles allowed consumers to see their contents either by looking through the transparent bottom or unscrewing the lid, and also accurately reported the weight of the crystals inside. Reasonable consumers would know roughly how much product they were receiving when purchasing these bottles.

Because the bottles themselves make "it impossible for [Macaspac] to prove that a reasonable consumer was likely to be deceived," Henkel is entitled to judgment as a matter of law on Macaspac's UCL, FAL, and CLRA claims. <u>Williams</u>, 552 F.3d at 939.

**B.     Leave to Amend**

Macaspac requests leave to amend her complaint. (Doc. No. 30 at 17.) However, leave to amend should be denied when it would be futile—i.e., "the complaint could not be saved by any amendment." <u>See, e.g.</u>, <u>Curry v. Yelp Inc.</u>, 875 F.3d 1219, 1228 (9th Cir. 2017) (citation and quotation marks omitted). No amount of additionally pleaded facts could change the features of the Purex bottles that render them non-deceptive. The Court accordingly denies leave to amend and dismisses the complaint with prejudice.

## Conclusion

For the foregoing reasons, the Court concludes that: (i) the Purex bottles do not violate § 12606(b); and (ii) no reasonable consumer could be deceived or misled by the

bottles into thinking that they were purchasing more product than the bottles actually contained. Because these conclusions entitle Henkel to judgment as a matter of law, the Court grants Henkel's motion for judgment on the pleadings, denies Macaspac's motion for class certification as moot, and directs the Clerk of the Court to enter judgment in favor of Henkel.

**IT IS SO ORDERED.**

DATED: June 4, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT



**EXHIBIT 2 - PAGE 000020**





**EXHIBIT 2 - PAGE 000024**